UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **DELTA ELECTRONICS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | WA-23-CV-00726-KC |
| | § | |
| **VICOR CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Vicor Corporation's (Vicor) "Motion to Dismiss Pursuant to Rule 12(b)(3) or, Alternatively, to Transfer Pursuant to 28 USC § 1404(a), and to Dismiss Pursuant to Rule 12(b)(6)" (ECF No. 16). Plaintiff Delta Electronics, Inc. (Delta) brought this lawsuit against Vicor, alleging infringement of U.S. Patent No. 9,819,263 (the '263 Patent). The Honorable District Judge Kathleen Cardone (the referring court) referred the motion to the undersigned Magistrate Judge. For the reasons that follow, the Court **PERMITS** Delta to conduct limited venue discovery before the Court may satisfactorily make its findings on the pending motion and recommend them to the referring court.[1]

### I. BACKGROUND

Delta designs, manufactures, and sells power converters that are used to power electronic devices such as servers.[2] It is a corporation organized and existing under the laws of Taiwan; its

---

[1] *See* Local Ct. Rules, Appx. C, Rule 1, § (d)(2) (W.D. Tex.) ("A magistrate judge may determine any preliminary matters and conduct any necessary evidentiary hearing or other proceeding arising in the exercise of the authority conferred by this subsection," *i.e.*, Rule 1(d), which governs a magistrate judge's recommendations regarding case-dispositive motions under 28 U.S.C. § 636(b)(1)(B).); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016–18 (5th Cir. Unit A 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders.").

[2] Compl. at ¶ 2, ECF No. 1.

principal place of business is in Taipei, Taiwan.[3] Delta Electronics (Americas) Ltd., a subsidiary of Delta, maintains an office in Austin, Texas—within this District.[4] Vicor designs, manufactures, and sells modular power components and systems for converting electrical power that are used to power, among others, server processors and artificial intelligence accelerator cards.[5] Vicor is a corporation organized and existing under the laws of Delaware.[6] Its corporate headquarters is in Andover, Massachusetts.[7] Freedom Power Systems, Inc. (FPS), a Delaware corporation and a wholly owned subsidiary of Vicor, is located in Cedar Park, Texas—within this District.[8]

On October 23, 2023, Delta initiated this lawsuit. It alleges that Vicor did, and continues to, directly infringe, induce infringement of, and contribute to the infringement of at least claim 1[9] of the '263 Patent, which is entitled, "Power Converter and Method for Manufacturing the

---

[3] *Id.* at ¶ 5.

[4] Pl.'s Opp'n to Mot. to Dismiss or Alternatively Transfer Venue at 17 [hereinafter, Pl.'s Resp.], ECF No. 17; Pl.'s Ex. 3, ECF No. 17-4.

[5] Pl.'s Ex. 1, ECF No. 17-2; Fendelet Decl., Def.'s Ex. 2, at ¶ 10, ECF No. 16-2.

[6] Compl. ¶ 6.

[7] Fendelet Decl. at ¶ 3.

[8] *Id.* at ¶ 4; Morgan Decl., Def.'s Ex. 1, at ¶¶ 3, 7, ECF No. 16-1; Pl.'s Ex. 10 at 84, ECF No. 17-11. Citations to Delta's Ex. 10 (ECF No. 17-11) refer to the page numbers imprinted thereon by the Court's Case Management and Electronic Case Filing system.

[9] Claim 1 recites:

1. A power converter, comprising:
a carrier, comprising:
  an upper surface; and
  a lower surface;
a first electronic component disposed at the lower surface of the carrier;
a second electronic component disposed at the upper surface of the carrier; and
a first connection part, comprising:
  a first terminal electrically coupled to the upper surface or the lower surface of the carrier;
    and

Same." It alleges that certain power module products of Vicor, including, but not limited to, model NBM2317S60D1580T0R, and Vicor's SM-ChiPs (the Accused Products) infringe the '263 patent.[10]

On January 26, 2024, Vicor filed the instant motion.[11] On February 9, Delta filed its response to the motion,[12] and on February 16, 2024, Vicor followed by filing a reply.[13] On February 20, 2024, the referring court referred the motion to the undersigned judge.

## II.   DISCUSSION

In its motion, Vicor asserts three grounds for relief. First, it moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(3), arguing that venue is improper in the Western District of Texas under 28 U.S.C. § 1400(b). Second, and in the alternative to the first ground, it moves under 28 U.S.C. § 1404(a) to transfer the case to the District of Delaware. Third, it

---

> a second terminal attached to a surface of the first electronic component apart from the carrier, wherein the second terminal of the first connection part is a bonding pad;
> wherein the carrier is disposed at ⅓ to ⅔ of a height of the power converter, and wherein the first connection part is fabricated by mechanical support of the first electronic component.

'263 patent at col. 15, ll. 22–41.

[10] Compl. at ¶¶ 28–30; *id.*, Ex. 2 at 2, ECF No. 1-2. As the parties' briefing indicates, in July 2023, before this lawsuit was initiated in this District, Vicor sued Delta in the Eastern District of Texas, alleging Delta's infringement of multiple Vicor patents. Def.'s Mot. to Dismiss Pursuant to Rule 12(B)(3) or, Alternatively, to Transfer Pursuant to 28 USC § 1404(A), & to Dismiss Pursuant to Rule 12(B)(6) at 2 [hereinafter, Def.'s Mot to Dismiss], ECF No. 16; Pl.'s Resp. at 3 (referencing *Vicor Corp. v. Delta Elecs., Inc.*, No. 2:23-CV-00323-JRG-RSP (E.D. Tex.)). And in November 2023, after this lawsuit was initiated, Delta sued Vicor in the District of Delaware, alleging Vicor's infringement of two Delta patents—none of which is asserted in this action. Def.'s Mot. to Dismiss at 2, 10; Pl.'s Resp. at 3 (referencing *Delta Elecs., Inc. v. Vicor Corp.*, No. 23-CV-01246-JLH (D. Del.)). The Vicor products that are accused of infringing one of the two patents asserted in the Delaware action are identical to the Accused Products in this action. *Compare* Def.'s Ex. 4 at 1, ECF No. 16-4, *with* Compl., Ex. 2 at 2.

[11] Def.'s Mot to Dismiss at 1.

[12] Pl.'s Resp. at 1.

[13] Def.'s Reply Br. in Supp. of Mot. to Dismiss at 1 [hereinafter, Def.'s Reply], ECF No. 19.

moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Delta's Complaint fails to plausibly allege that (a) one of the claim 1 limitations ("the first connection part is fabricated by mechanical support of the first electronic component") is met by the Accused Products and that (b) Vicor knew of the '263 patent or that the acts at issue constituted infringement.

As an initial matter, the Court notes the following interdependencies among the three grounds asserted by Vicor. As to the first ground, if the Court were to find that venue is improper in this District, it may be inclined to transfer the case, in lieu of dismissing it, under 28 U.S.C. § 1406(a),[14] to another district where venue would be proper—perhaps to the District of Massachusetts, which encompasses Andover, Massachusetts, where Vicor is headquartered,[15] or more likely, to the District of Delaware, as Vicor is incorporated in Delaware. As to the second ground, the Court could transfer the case under § 1404(a)[16] to the District of Delaware, as Vicor requests—if it were to find that the District of Delaware, is "a clearly more convenient venue than" this District. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). But § 1404(a) "applies only if the original federal forum is a proper venue." 14D Charles A. Wright & Arthur R. Miller,

---

[14] *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) ("Under the transfer statute, a district court may transfer a case upon a motion or sua sponte." (citing § 1406)).

[15] Delta alleges that Vicor has its principal place of business in Andover, Massachusetts, Compl. at ¶ 6, and Vicor has not stated anything to dispute that allegation or that venue would not be proper in the District of Massachusetts.

[16] *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented.").

*Fed. Practice & Procedure* § 3826 (4th ed.).[17] And, as to the third ground, if transfer is warranted—either under § 1406(a) or § 1404(a)—then it would seem appropriate for this Court to abstain from deciding Vicor's challenges to the pleading sufficiency, leaving that issue for the transferee court.[18]

So, the propriety of venue in this District is a threshold issue here. And on that issue, as will be discussed shortly, Delta attempts to make its case based on publicly available information about Vicor, whereas Vicor attempts to defeat Delta's case by marshaling declarations. Ultimately, Delta nudges the Court to permit it to conduct venue discovery and not to dismiss the

---

[17] *See also In re Atl. Marine Const. Co.*, 701 F.3d 736, 738–39 (5th Cir. 2012) ("[T]he determination of whether § 1406 or § 1404(a) applies turns on whether venue is proper in the court in which the suit was originally filed. If venue is improper in that court, then § 1406 or Rule 12(b)(3) applies. If venue is proper in that court, then § 1404(a) applies."), *rev'd on other grounds sub nom. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013).

[18] *See e.g., FrenchPorte, LLC v. C.H.I. Overhead Doors, Inc.*, No. GJH-20-00467, 2021 WL 242499, at *3 (D. Md. Jan. 25, 2021) (transferring case under § 1406, finding the venue is improper, and declining to reach the merits of defendant's Rule 12(b)(6) arguments); *Seaman v. IAC/InterActiveCorp, Inc.*, No. 3:18-CV-401, 2019 WL 1474392, at *3 (E.D. Va. Apr. 3, 2019) (transferring case under § 1404(a) and stating "it is appropriate that this [c]ourt not consider the [d]efendants' request for dismissal under [Rule] 12(b)(6)").

That reluctance, if transfer is warranted, to adjudicate Vicor's pleading insufficiency challenge is solidified by one of the parties' disputes. Delta's Complaint alleges that "Vicor has knowledge of the '263 Patent at least as of the filing of this complaint." Compl. at ¶ 44. Vicor argues, but Delta disagrees, that this allegation is insufficient to confer the requisite knowledge for post-suit indirect infringement or willfulness. In so arguing, Vicor relies on decisions from the District of Delaware, whereas Delta relies on decisions from the Western District of Texas, but based on the parties' expositions, it seems that these cases have held differently on the disputed issue. *Compare* Def. Mot. to Dismiss at 19 ("The Federal Circuit has not squarely addressed this issue[;] however, courts have increasingly held that such claims require more than an allegation of knowledge stemming from the filing of the complaint." (citing *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251–52 (D. Del. 2021), and *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019)), *with* Pl.'s Resp. at 9 ("Vicor, while acknowledging that the Federal Circuit has not squarely addressed this issue[,] cites only to out-of-District (and indeed out-of-Circuit) cases for support, whereas the cases in this District clearly allow indirect and willful infringement to be pled without pre-suit knowledge, at least for a post-suit indirect and willful infringement." (cleaned up)); *id.* at 10 & nn. 7–8 (relying on, among other cases, *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 778, 781 (W.D. Tex. 2022)).

case.  Pl.'s Resp. at 1, 12 & n.9; 13, 15.  Before addressing Delta's request, the Court sketches the procedural and statutory backdrop that informs the Court's evaluation of that request.

**A.   The Backdrop: Rule 12(b)(3) and § 1400(b)**

Rule 12(b)(3), the procedural vehicle Vicor uses here, allows dismissal when venue is "improper."  Fed. R. Civ. P. 12(b)(3).  Except for the question of who bears the burden on a Rule 12(b)(3) motion in patent cases, which is "a substantive aspect of § 1400(b)," the procedural aspects of the Rule "not unique to patent law" are governed by regional circuit law.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).  Under Fifth Circuit law, a district court may decide a Rule 12(b)(3) motion based on "any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

In ruling on a Rule 12(b)(3) motion, "the court is permitted to look at evidence in the record beyond simply th[e] facts alleged in the complaint and its proper attachments."  *Ambraco*, 570 F.3d at 238.  The court generally accepts as true "all well-pleaded allegations in the complaint bearing on the venue question . . . , unless [they are] contradicted by the defendant's affidavits."  5B Wright & Miller, § 1352, *supra* (footnotes omitted).[19]  Still, the court must "view all the facts in a light most favorable to the plaintiff," *Ambraco*, 570 F.3d at 237, drawing all reasonable inferences and resolving any ambiguities in favor of the plaintiff, 5B Wright &

---

[19] *See also EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001-ADA, 2022 WL 1241967, at *6 (W.D. Tex. Apr. 26, 2022) ("The trend among circuit courts is to accept well-pleaded facts only to the extent that such facts are uncontroverted by a defendant's affidavit." (cleaned up) (collecting cases) (addressing a Rule 12(b)(3) motion)); *cf. Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) ("The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." (addressing a motion to dismiss for lack of personal jurisdiction)).

Miller, § 1352, *supra*; *Lonrho PLC v. Starlight Invs., LLC*, No. CIV.A. H-11-02939, 2012 WL 256421, at *2 (S.D. Tex. Jan. 27, 2012).[20]

Whether venue is "improper" under Rule 12(b)(3) is governed by § 1400(b), the patent-specific venue statute. *In re Atl. Marine Const.* 571 U.S. at 55 & n.2. Upon a motion, such as a Rule 12(b)(3) motion, by a defendant challenging venue under § 1400(b), the plaintiff bears the burden of establishing proper venue. *In re ZTE*, 890 F.3d at 1013.[21] Under § 1400(b), proper venue for a patent infringement lawsuit lies either in any judicial district where the defendant "resides" or in any judicial district where the defendant "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).[22] Here, Delta does not argue that Vicor resides in the Western District of Texas, and Vicor's motion does not turn on whether it has committed acts of infringement in this District. Vicor argues, contrary to Delta'a allegation, that it does not have "a regular and established place of business" in this District. Def.'s Mot. to Dismiss at 7; Compl. at ¶ 9. And on that basis, Vicor seeks dismissal.

Only since the Supreme Court decided *TC Heartland*[23] in 2017, has the Federal Circuit had occasions to address the meaning and requirements of the phrase "regular and established

---

[20] *See also Ambraco*, 570 F.3d at 238 ("[I]n the absence of factual findings made by the district court based upon an evidentiary hearing, affidavits and other evidence submitted by the non-moving party in the context of a Rule 12(b)(3) challenge are to be viewed in the light most favorable to that party (citing *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138–40 (9th Cir. 2004))).

[21] *See also In re ZTE*, 890 F.3d at 1016 (vacating lower court's order denying motion to dismiss for improper venue); *id.* at 1013 (noting Rule 12(b)(3) was used in that case).

[22] *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("Federal Circuit law, rather than regional circuit law, governs [the] analysis of what § 1400(b) requires.").

[23] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017). There, the Supreme Court overruled the Federal Circuit's prior holding in *VE Holding Corporation v. Johnson Gas Appliance Company*, 917 F.2d 1574 (Fed. Cir. 1990), that 28 U.S.C. § 1391(c)—the general venue statute, which, at the time, provided that a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction"—supplied the definition of the term "resides" in § 1400(b), and the

place of business." *In re Cray*, 871 F.3d at 1359.[24] In *Cray*, the Federal Circuit held that there are three general requirements to establishing that the defendant has a regular and established place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."[25] *Id.* at 1360. For the inquiry into these requirements, "no precise rule has been laid down and each case depends on its own facts." *Id*. at 1362. Following *Cray*, the Federal Circuit has addressed, in a handful of opinions, whether the place of business of one company can be imputed to another, related company (who is the defendant) under the "alter-ego or veil-piercing" theory,[26] the "agency" theory,[27] and the "ratification" theory.[28] As these cases reflect, the inquiry into "regular and established place of business" turns on the assessment of "a series of non-exclusive factors," *In*

---

Supreme Court held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute," *TC Heartland*, 581 U.S. at 262, 266–67.

[24] In *Cray*, the Federal Circuit noted that "for nearly the last 30 years, venue in patent infringement cases has largely turned on whether a defendant 'resides' in the district in question," but since *TC Heartland*, patent venue has, "with increased frequency," turned on, "where a defendant has a 'regular and established place of business.'" *In re Cray*, 871 F.3d at 1359. It further noted that previously, it addressed the phrase "regular and established place of business" only once and did so in the context of a mandamus petition, but it did not "evaluate venue in light of the statutory language of § 1400(b)." *Id.* (citing *In re Cordis Corp*., 769 F.2d 733, 736–37 (Fed. Cir. 1985)).

[25] The second *Cray* factor requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).

[26] *Celgene Corp. v. Mylan Pharms. Inc*., 17 F.4th 1111, 1125–26 (Fed. Cir. 2021).

[27] *In re Volkswagen Grp. of Am., Inc*., 28 F.4th 1203, 1208–09 (Fed. Cir. 2022); *In re Google*, 949 F.3d at 1345–47; *see also Celgene*, 17 F.4th at 1127 (noting that plaintiff failed to argue that a wholly owned subsidiary's office was the parent's office under an agency theory).

[28] *Andra Grp., LP v. Victoria's Secret Stores, L.L.C*., 6 F.4th 1283, 1289–90 (Fed. Cir. 2021); *see also Celgene*, 17 F.4th at 1127 ("[I]t might be that a parent corporation might specifically ratify a subsidiary's place of business, even if the two do maintain corporate separateness.").

- 8 -

*re ZTE*, 890 F.3d at 1015,[29] involving "fact-laden disputes," *In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 161 (Fed. Cir. 2022).

Here, Delta relies on, at minimum, the alter-ego theory. "Venue may be imputed under an alter-ego or veil-piercing theory," but "where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Celgene*, 17 F.4th at 1125 (internal quotes omitted). The law of the regional circuit applies to the issue of alter ego. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007). The Fifth Circuit uses the following non-exhaustive list of factors, referred to as the *Jon-T* factors, in analyzing alter ego for purposes of liability:[30]

---

[29] *See also, e.g.*, *In re Cray*, 871 F.3d at 1363–64, (setting forth factors for the third *Cray* factor); *In re ZTE*, 890 F.3d at 1015–16 (expanding on the factors set forth in *Cray* for the third *Cray* factor); *In re Google*, 949 F.3d at 1345 (adopting elements of agency from Restatement of Agency for the second *Cray* factor); *Andra Grp.*, 6 F.4th at 1290 (setting forth "additional factors" for deciding ratification under the third *Cray* factor); *Celgene*, 17 F.4th at 1125–26 (applying the Third Circuit's factors for analyzing alter-ego under the third *Cray* factor).

[30] This list of factors was developed for determining alter-ego relationships for purposes of liability. However, for purposes of imputing personal jurisdiction, the Fifth Circuit uses a slimmed-down set of factors, referred to as the *Hargrave* factors. *See Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 801 (5th Cir. 2024) (listing the *Hargrave* factors (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). The Fifth Circuit has explained that "'the alter ego test for attribution of contacts, i.e., personal jurisdiction, is less stringent than that for liability.'" *DP Sols., Inc. v. Rollins, Inc.*, 34 F. App'x 150, 2002 WL 494672, at *5 (5th Cir. 2002) (unpublished table decision) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985), and citing *Reul v. Sahara Hotel*, 372 F. Supp. 995, 997 (S.D. Tex. 1974)). Indeed, in one case, the Fifth Circuit declined to apply the *Jon-T* factors in analyzing alter ego for jurisdictional purposes, noting that "jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof." *Licea v. Curacao Drydock Co.*, 952 F.3d 207, 212 (5th Cir. 2015); *see also id.* at 213 n.2 ("[S]ome alter ego cases cited by the parties are inapposite because they recite factors to consider in substantive veil piercing rather than jurisdictional veil piercing.").

In its response brief, Delta relies on the *Jon-T* factors, *see* Pl.'s Resp. at 13 (citing Mem. Op. & Order at 15, *WSOU Inves., LLC v. Canon, Inc.*, No. 6:20-CV-00980-ADA (W.D. Tex. Feb. 11, 2022) (in turn, citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006)), ECF No. 137), and in its reply brief, Vicor mentions cases addressing alter ego for jurisdictional purposes, *see* Def.'s Reply at 3–4 (citing, for example, *Hargrave*, 710 F.2d at 1160). At this point, the Court need not decide whether the *Jon-T* factors or the *Hargrave* factors should apply to the question of alter ego for venue purposes. For now, the Court observes that in *Celgene*, the Federal Circuit applied the alter-ego factors from a Third Circuit opinion where the regional circuit discussed those factors in the context of liability

(1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985). The facts relevant to many of these factors are not likely to be publicly available,[31] and that presents hurdles for a plaintiff who bears the burden of establishing venue in a Rule 12(b)(3) posture. To be sure, such hurdles also arise in the parallel case of personal jurisdiction, where the plaintiff likewise bears the burden of persuasion in a Rule 12(b)(2) posture.[32]

## B. Whether Venue Discovery Should be Permitted

With the above canvas of the relevant backdrop, the Court returns to Delta's request for venue discovery in lieu of dismissal: specifically, should Delta be allowed discovery on the issue of whether Vicor has "a regular and established place of business" in the Western District of

---

between parents and subsidiaries. *Celgene*, 17 F.4th at 1125–26 (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 & n.2 (3d Cir. 2001)).

[31] *See Brewer v. All. Coal, LLC*, No. CV 20-41-DLB-EBA, 2021 WL 3057380, at *4 (E.D. Ky. July 20, 2021) ("[T]he pertinent facts needed to properly assess Plaintiff's alter-ego theory are not likely to be found in publicly available sources."); *Adobe Sys. Inc. v. Software Speedy*, No. C-14-2152 EMC, 2014 WL 7186682, at *4 (N.D. Cal. Dec. 16, 2014) ("[F]acts relevant to proving an alter ego claim are frequently not publically available.").

[32] *See In re ZTE*, 890 F.3d at 1014 (comparing a plaintiff's burden on a venue challenge directed to § 1400(b) with its burden to establish personal jurisdiction); *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 2:17-CV-00418-JRG, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (noting that "evidence of jurisdictional facts is often largely or wholly in the possession of an adverse party").

Texas?[33]  As other lower courts have observed, the Federal Circuit has not addressed whether Federal Circuit law or regional circuit law applies when considering a request for venue discovery for purposes of § 1400(b).  Moreover, the Court could not locate either a Federal Circuit case or a Fifth Circuit case that delineates the standard for evaluating such a request.  *See In re Cray*, 871 F.3d at 1359 (acknowledging that there is "'uncertainty among the litigants regarding . . . the appropriate scope of . . . venue discovery'" (quoting *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 794 (E.D. Tex. 2017))); *cf. In re Clarke*, No. 24-50079, --- F.4th ----, 2024 WL 886953, at *10 (5th Cir. Mar. 1, 2024) (noting that § 1404(a) "venue transfer decisions are rarely reviewed" by the appellate court).  The Court looks to "the parallel case[s] of personal jurisdiction," *In re ZTE*, 890 F.3d at 1014, from the Fifth Circuit since the issue of jurisdictional discovery in a Rule 12(b)(2) posture is often presented to the appellate courts.[34]

---

[33] Delta correctly points out that the referring court's standing order does not foreclose venue discovery at this stage of the litigation.  Standing Order on Patent Cases at § IV (W.D. Tex. Sept. 14, 2022) (Cardone, J.) ("Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery shall be stayed until after the *Markman* hearing, unless the parties agree to conduct additional discovery.  If the parties do not agree, the party seeking additional discovery prior to the *Markman* hearing must seek leave of Court."), https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Standing-Order-on-Patent-Cases-091422.pdf.  To the extent that Vicor opposes Delta's request, *see post*, the issues here are, primarily, whether Delta should be granted leave to conduct venue discovery and therefore, secondarily, whether Vicor's motion should be held in abeyance or dismissed without prejudice to refiling upon the completion of venue discovery.

[34] *See, e.g.*, *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2019 WL 4857340, at *4 (S.D.N.Y. Oct. 2, 2019) (applying Second Circuit law concerning jurisdictional discovery to a request for venue discovery and observing that "[o]ther district courts have, by comparison, applied regional circuit law concerning venue discovery in patent cases (to the extent any exists) and failing that, the regional circuit's law on jurisdictional discovery"); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 934 & n.15 (E.D. Va. 2017) (applying the Fourth Circuit's jurisdictional-discovery standard to a request for venue discovery and stating that it "could not locate a Fourth Circuit case setting forth the standard for evaluating a plaintiff's request for venue-specific discovery (or a Federal Circuit case, for that matter)"); *see also, e.g.*, *Novartis Pharms. Corp. v. Handa Neuroscience, LLC*, No. CV 21-645-LPS, 2022 WL 610771, at *8 (D. Del. Mar. 1, 2022) (applying the Third Circuit's jurisdictional-discovery standard to venue discovery); *Marble VOIP Partners LLC v. Zoom Video Commc'ns, Inc.*, No. 22-CV-2247-JAR-ADM, 2023 WL 3948477, at *2 (D. Kan. June 12, 2023) (applying the Tenth Circuit's jurisdictional-discovery standard to venue discovery); *Pat. Holder LLC v. Lone Wolf Distributors, Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *7 (S.D. Fla. Nov. 1, 2017) (applying the Eleventh Circuit's jurisdictional-discovery standard to venue discovery); *but see Blue Water Innovations, LLC v. Vevazz,*

A court may grant a request for venue discovery before determining whether venue is improper. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) ("When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss.").[35] It has "broad discretion" whether to grant such a request. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000) (stating "a district court has broad discretion in all discovery matters" while addressing lower court's dismissal of claims without affording plaintiff jurisdictional discovery (internal quotes omitted)).[36] "Discovery is

---

*LLC*, No. 620CV774ORL78DCI, 2020 WL 6828950, at *4 (M.D. Fla. Oct. 29, 2020) (expressing reservations about whether the regional circuit's law on jurisdictional discovery should govern venue discovery in patent cases, but nevertheless applying the Eleventh Circuit's jurisdictional-discovery standard to venue discovery).

The Court's approach here is not inconsistent with the approaches taken by the Federal Circuit in the context of personal jurisdiction discovery. Whereas, in patent-infringement cases, the substantive standard for "[p]ersonal-jurisdiction analysis . . . is governed by Federal Circuit law," *Univ. of Massachusetts v. L'Oreal S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (stating that although "we apply the law of the [regional circuit] to procedural matters that are not unique to patent law," Federal Circuit law governs determination of personal jurisdiction in patent actions because jurisdiction is "intimately related to substantive patent law")—the Federal Circuit reviews a denial of jurisdictional discovery, an issue not unique to patent law, "applying the law of the regional circuit," *Univ. of Massachusetts*, 36 F.4th at 1384 (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009)). Still, however, "[i]n determining the relevance of a request for jurisdictional discovery," the Federal Circuit has said, "we apply Federal Circuit law." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)); *cf. also Truswal Sys.*, 813 F.2d at 1212 (stating that the determination of relevance under Federal Rule of Civil Procedure 26(b)(1), which "implicates the substantive law of patent validity and infringement," is governed by Federal Circuit law). Here, however, relevance has not been called into question by the parties regarding Delta's request for venue discovery into "a regular and established place of business" under § 1400(b). *Cf. Autogenomics*, 566 F.3d at 1023 n.2 (distinguishing *Commissariat* on the ground that the court was not tasked to determine relevancy in that case).

[35] *See also Galderma Labs., L.P. v. Medinter US, LLC*, No. CV 18-1892-CFC-CJB, 2019 WL 13114421, at *3 (D. Del. Oct. 25, 2019) ("The Court may . . . grant venue-related discovery before determining whether venue is appropriate in order 'to ascertain the facts bearing on such issues.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978))).

[36] *See also Wyatt*, 686 F.2d at 283 ("In an appropriate case, we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery.").

not justified when cost and inconvenience will be its sole result." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1270 & n.116 (5th Cir. 1990).

Venue discovery may be warranted where a plaintiff "present[s] a non-frivolous" basis for venue, *Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1501–02 (5th Cir. 1993) (Johnson J. concurring in part, dissenting in part),[37] and "the motion to dismiss raises issues of fact," *Wyatt*, 686 F.2d at 284,[38] or "a more satisfactory showing of the facts is necessary," *Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 589 (10th Cir. 2006) (citing *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)); *cf. Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) ("With the facts not fully developed, a fair and conclusive resolution of the jurisdictional issue cannot be made at this stage of the proceedings.").[39]

---

[37] *See also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 708 (1982) (concluding that "respondent's allegation that the court had personal jurisdiction over petitioners was not a frivolous claim, and its attempt to use discovery to substantiate this claim was not, therefore, itself a misuse of judicial process").

[38] *See also, e.g.*, *STC.UNM v. TP-Link Techs. Co.*, No. W-19-CV-00262-ADA, 2020 WL 10758856, at *3–*4 (W.D. Tex. Jan. 2, 2020) (permitting plaintiff limited venue discovery, noting that the defendant's declaration was inconsistent with the publicly available information on the defendant's website); *St. Croix Surgical Sys., LLC v. Cardinal Health, Inc.*, No. 2:17-CV-00500-JRG-RSP, 2018 WL 9869367, at *2 (E.D. Tex. Feb. 28, 2018) (allowing venue and jurisdictional discovery, observing that the information provided in the defendant's declarations was contrary to the publicly available information on the defendant's websites and signages on buildings, and denying without prejudice motion to dismiss for improper venue).

[39] *See also e.g.*, *Celgene Corp. v. Hetero Labs Ltd.*, No. 2:17-cv-03387-ES-MAH, 2018 WL 1135334, at *4 (D.N.J. Mar. 2, 2018) (permitting venue discovery because "the record, at present, does not permit [the court] to make a finding" and denying without prejudice motion to dismiss for improper venue), *disagreed on other grounds by Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374 (Fed. Cir. 2020); *Javelin Pharm., Inc. v. Mylan Labs. Ltd.*, No. 16-CV-224, 2017 WL 5953296, at *2–*3 (D. Del. Dec. 1, 2017) (allowing limited venue discovery because "the record, at present, does not permit it to make a finding" as to whether one or more of the defendants lacks a regular and established place of business in the District of Delaware and denying motion to dismiss for improper venue without prejudice to renew after a period of venue-related discovery); *Regenlab USA LLC v. Estar Techs. Ltd.*, No. 16-CV-08771 (ALC), 2017 WL 3601304, at *2–*3, *6 (S.D.N.Y. Aug. 17, 2017) (permitting limited venue discovery because "some additional factual development" would be "helpful to adjudicate the pending motions to dismiss for improper venue" and denying the motion without prejudice to refiling

Here, Delta's Complaint alleges that Vicor maintains a regular and established place of business in this District, including a facility at 1620 La Jaita Dr. Ste 100, Cedar Park, TX 78613 (the Cedar Park Address). Compl. at ¶ 10. Specifically, it alleges, *inter alia*, that Vicor lists its presence in Cedar Park on its annual SEC reports and lists "Cedar Park (Austin), TX" as an "Additional location" on the Vicor Corporation fact sheet available on Vicor's website. *Id.* at ¶ 13. It adds that FPS, a subsidiary of Vicor, occupies the facility at the Cedar Park Address. *Id.* at ¶ 12. It further alleges that upon information and belief, Vicor employs at least 20 individuals in the building located at the Cedar Park Address. *Id.* at ¶ 16.

In its motion, Vicor argues that only FPS, and not Vicor, conducts business from the Cedar Park Address and that Vicor and FPS have not disregarded corporate separateness. Def.'s Mot. to Dismiss at 7–8. In support of its arguments, Vicor submitted two declarations: one by Quentin Fendelet, the Corporate Vice President and Chief Accounting Officer of Vicor, and the other by Dan Morgan, the General Manager of FPS. Morgan Decl., *supra*; Fendelet Decl., *supra*.

In responding to the motion, Delta makes two arguments. First, it argues that Vicor's argument about FPS is mostly irrelevant because Vicor itself has a presence in this District based on its own words and those of its employees. Pl.'s Resp. at 11. In support of that argument, Delta submitted a copy of the Vicor Corporation fact sheet, Pl.'s Ex. 1, and a copy of one Iain Hurn's LinkedIn profile, which lists both "Vicor Corporation" and "Vicor Power Solutions" under his experience, Pl.'s Ex. 2, ECF No. 17-3. Delta's first argument thus seems to rest on a straightforward application of the three *Cray* factors—in that Vicor's (not FPS's) employees, for

---

after the completion of venue discovery); *but see Alpine View*, 205 F.3d at 221 (finding no abuse of discretion by the lower court in dismissing claim without affording plaintiff jurisdictional discovery because "no amount of information on . . . contacts with Texas would strengthen [the plaintiff's] showing of specific jurisdiction").

example, Hurn, work at the Cedar Park Address.  Second, Delta asserts the alter-ego theory.  Pl.'s Resp. at 13.  Relying on publicly available information—from, *inter alia*, Vicor's Form 10-K SEC filing, FPS's Texas corporate registration, and Vicor's and FPS's websites, the copies of which Delta submitted as exhibits—Delta argues that for venue purposes, an alter-ego relationship exists between Vicor and its wholly owned subsidiary, FPS.  *Id.* at 13–15.  It adds that Vicor's declarations address none of the *Jon-T* factors, except one (the second factor).  *Id.* at 15.

In reply, Vicor submitted a second declaration by Morgan and a declaration by Hurn.  Therein, Morgan expands on his prior declaration and testifies as to information pertinent to the *Jon-T* factors, *see* Second Morgan Decl., Def.'s Ex. B, ECF No. 19-2, and Hurn testifies, *inter alia*, that he is not an employee of Vicor but is the Director of Operations of "Vicor Power Solutions," a business unit comprising Vicor Corporation subsidiaries, Hurn Decl., Def.'s Ex. A, ECF No. 19-1.  Relying on these and the two prior declarations, Vicor argues that Delta cannot meet its burden to show that FPS is an alter ego of Vicor.  Def.'s Reply at 2–4.

Delta contends that Vicor's arguments about FPS are more appropriately addressed through venue discovery, not a dismissal of this action.  Pl.'s Resp. at 1.  It argues that there are disputed questions of fact between Vicor's publicly available information and Vicor's declarations, including Hurn's declarations.  *Id.* at 12 & n.9.  It urges that venue discovery—including depositions of the individuals who provided declarations for Vicor's motion, along with Hurn, as well as employees of FPS in Cedar Park—is necessary to resolve these disputes.  *Id.*  It bases its discovery requests also on the ground that there is no evidence relevant to some of the *Jon-T* factors.  *Id.* at 13, 15.  In a footnote in its reply brief, Vicor opposes venue

discovery, suggesting that no additional information would alter the outcome. Def.'s Reply at 4 n.5.

The Court has carefully reviewed the evidence of record. Viewing all the facts in the light most favorable to Delta, it finds, for purposes of venue discovery, that Delta has presented colorable bases for venue in this District. The Court finds that a more satisfactory showing of the venue-related facts is necessary; limited venue discovery would be helpful for the Court to rule on Vicor's motion to dismiss. *See Celgene*, 2018 WL 1135334, at *4 (D.N.J. Mar. 2, 2018), *supra*; *Javelin Pharm.*, 2017 WL 5953296, at *2–*3, *supra*; *Regenlab USA*, 2017 WL 3601304, at *2–*3, *6, *supra*. While the Court has no basis to question the sincerity of Vicor or its declarants, or the veracity of their declarations, it is significant what these declarations do not say, particularly in light of the publicly available information about Vicor and its subsidiaries, that may weigh in favor finding of venue in this District.

For example, as Delta points out, the record evidence does not speak, one way or another, to some of the *Jon-T* factors, such as the seventh and tenth factors. Pl.'s Resp. at 15. As another example, Morgan testifies that "FPS maintains business departments that are separate from Vicor's," Second Morgan Decl. at ¶5, and that "FPS's business is to provide design, manufacturing, and testing services," *id.* at ¶ 6, but the declarations say nothing about whether the two entities share manufacturing facilities or departments (a fact relevant to the third *Jon-T* factor); the publicly available information about Vicor and its subsidiaries seems to indicate that Vicor has only one manufacturing facility, and that is in Andover, Massachusetts, *see* Pl.'s Ex. 10 at 4 ("We are headquartered in Andover, Massachusetts, where our manufacturing facility is located."). The declarations also do not shed light on whether the two entities share marketing, sales, or technical support teams. *See* Fendelet Decl. at ¶ 11 ("Vicor's sales teams in the United

States primarily work[] out of the company's Andover headquarters."); Pl.'s Ex. 10 at 11 (stating that Vicor's domestic technical support centers are located in Massachusetts, Illinois, and California, which may suggest that those centers also serve FPS's customers).

More, Vicor asserts, relying on Morgan's and Fendelet's declarations, that FPS has never purchased or otherwise acquired any of the Accused Products from Vicor and that FPS plays no role in making, using, selling, or offering to sell any of those products. Def.'s Mot. to Dismiss at 8. That may be so, but "§ 1400(b) does not require a causal relationship between a defendant's regular and established place of business and the acts of infringement." *In re Monolithic Power Sys.*, 50 F.4th at 160 n.1. According to Vicor's Form 10-K SEC filing, Vicor sells power components and power systems "to our subsidiaries for incorporation into their respective products." Pl.'s Ex. 10 at 19. The evidence of record does not address whether that statement applies to FPS.

So, it appears that limited discovery may reveal additional facts which may be favorable to Delta's venue arguments. To illustrate, in the declarations Vicor submitted with its opening brief, the declarants testify that FPS's officers do not overlap with Vicor's officers, and that FPS's directors do not overlap with Vicor's directors, Morgan Decl. at ¶ 5; Fendelet Decl. at ¶ 5, but they do not say whether there is any overlap among one entity's officers and the other entity's directors. In response to Delta's complaint that the declarations do not identify the officers and directors, Pl.'s Resp. at 15, Vicor submitted a second declaration by Morgan, which reveals that Fendelet is both an officer of Vicor and a director of FPS.[40] *Compare* Fendelet Decl. at ¶ 2, *with* Second Morgan Decl. at ¶ 3.

---

[40] Ultimately, this fact alone may not carry the day for Delta; however, it demonstrates that without some venue discovery, the Court is asked to decide the propriety of venue on an incomplete record. *Cf. Javelin Pharm.*, 2017 WL 5953296, at *6 (observing that the defendant there "essentially asks this [c]ourt to decide the motion on a one-sided factual record, without permitting the facts to be tested"

In sum, on this record, the Court finds that before it may make its recommendations to the referring court regarding Vicor's motion to dismiss, limited venue discovery should be permitted here "to allow the adversarial process to aid the Court in making a fact-specific decision on a well-developed factual record." *Javelin Pharm*., 2017 WL 5953296, at *3; *see also STC.UNM*, 2020 WL 10758856, *4 (granting leave for limited venue discovery, including document requests and deposition, reasoning that a declaration submitted by defendant there "was not subject to cross-examination and because cross-examination is 'beyond any doubt the greatest legal engine ever invented for the discovery of truth'" (quoting 3 Wigmore, Evidence § 1367, p. 27 (2d ed. 1923))). The Court **DEFERS** ruling on Vicor's motion until the completion of venue discovery and the parties file supplemental briefs—as instructed below.

## C. The Scope and Extent of Venue Discovery

"The court has discretion as to the type and amount of discovery to allow." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co*., 517 F.3d 235, 241 (5th Cir. 2008). The scope and extent of venue discovery permitted in this posture are as follows.

1) Discovery shall be limited to the issue of the propriety of venue in the Western District of Texas—specifically, whether Vicor has "a regular and established place of business" in this District.

2) Delta may depose Dan Morgan, Quentin Fendelet, and Iain Hurn who provided declarations in support of Vicor's motion on the issue of the propriety of venue in this District. The depositions of Morgan and Fendelet shall be limited to two (2) hours each, and the deposition of Hurn shall be limited to one (1) hour.

3) Delta may conduct a two-hour deposition of Vicor's Rule 30(b)(6) witness.

---

and concluding that "this would not be a reasonable and appropriate method of proceeding to resolve the important, novel venue questions that are now before it").

4) Delta may serve no more than ten (10) interrogatories and fifteen (15) requests for production. The time for Vicor to respond to such written discovery requests is shortened to twenty-one (21) days from the service of the requests.

5) The foregoing discovery shall not count toward Delta's discovery limits set forth in the Federal Rules of Civil Procedure or otherwise set forth in the referring court's Scheduling Order (ECF No. 22).

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Delta Electronics, Inc. is **GRANTED LEAVE** to conduct limited venue discovery consistent with this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that venue related discovery as permitted herein shall be completed within **sixty (60) days** of the issuance of this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that within **seven (7) days** after the completion of venue discovery, Delta **SHALL FILE** a sur-reply to Vicor's motion (ECF No. 16) on the issue of the propriety of venue in the Western District of Texas, and within **seven (7) days** after Delta files its sur-reply, Vicor **MAY FILE** a sur-sur-reply in support of its motion on the same issue.

The Court **DEFERS** ruling on Vicor's motion until after the above-ordered deadlines. Further, the Court **EXPECTS** the parties to cooperate in, and coordinate, their discovery efforts without the Court's intervention.

**So ORDERED and SIGNED this  20th  day of March 2024.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**